The common law of England, as inherited, adopted, and maintained by Virginia, contains a notable exception to the force or intimidation prong of common law robbery, such that Virginia and therefore Stoeckling does not abrogate this court's decision in Winston. The first principle that is important to keep in mind here is provided by statute in its Article I, Section 20 of the Virginia Code. And I want to read it because it's important and it states that the common law of England, insofar as not repugnant to the principles of the Bill of Rights and the Constitution of this Commonwealth, shall continue in full force within the same and be the rule of decision except as altered by the General Assembly. Since the Revolution, no appellate court in Virginia has challenged or even questioned the crimin in enomatum exception to the force and intimidation prong of common law robbery. In Houston, in 1890, the Supreme Court of Virginia had no problem saying that this is a part of the common law of Virginia and it had no difficulty doing that despite the fact that there were no prior Virginia precedents saying that it was part of the Virginia common law, despite the fact that there were plenty of cases before Houston in which the case had discussed the elements of common law robbery, and that there were no appellate decisions at the time in which the exception had been specifically discussed or applied to the facts. Again, in the next century, in three cases in three years, these are the Maxwell, Fleming and Falden decisions, the court again had no difficulty saying that this exception is part of Virginia's common law, despite intervening cases in which the common law robbery elements had been discussed without referencing the exception, and again, despite the fact that there was not appellate evidence that there had been a prosecution on the basis of that exception since the Houston case. It simply makes no difference that Houston, Maxwell, Falden and Fleming, that these were not cases that involved a prosecution on the basis of the exception. That argument, right, that this exception is dicta in Virginia is a red herring and that's because Virginia follows the common law, not bits and pieces of the exception on our- Let me- Go ahead. Oh, I'm sorry. Judge Neymar, you go ahead. No, no, go ahead. Go ahead. Okay. Mr. Jones, this argument wasn't made in Winston. You're aware of that, right? Yes. Yes, Your Honor. But this really is, I think, the first time an appellate court has had the opportunity to consider this issue in the context of common law robbery in Virginia. And I've been struggling whether this is a case that would be one for certification to the Virginia Supreme Court because we would be deciding what the law is in Virginia when Virginia hasn't spoken on it since 1938. And I agree with you, just because it hasn't spoken on it since 1938 doesn't mean it's not the law. In fact, when I was on the Supreme Court of Virginia, the judges used to say, the older the better. Okay? So, but my concern is here that we now have, by the U.S. Supreme Court, a decision that says, Lawrence v. Texas, that says sodomy without more is not a crime. Okay? So, how does that impact your analysis? Does it really take away your argument that this is a viable way of committing common law robbery in Virginia? And should we even trouble the Virginia Supreme Court about it? I think, potentially, we should trouble the Supreme Court of Virginia about it. I don't think that Lawrence v. Texas changes our analysis. Sodomy is not an archaic phrase. I mean, it is one that is continually in use in the Virginia codes. And even in 2015, in the Toghill decision, which is in my brief, they described Virginia's broadly worded anti-sodomy law. And so, sodomy is not just the conduct that was protected by Lawrence, but it's a number of practices which are still criminal in Virginia. And so, the purpose and the impetus behind having this exception in the common law robbery jurisprudence still exists today. Right. But those are mostly sodomy plus. In other words, sodomy involving a minor, or sodomy, you know, whatever. Can you give us an example of, I don't want to say just plain sodomy, but can you give us an example of sodomy without plus that is still a crime in Virginia? No, certainly the conduct that the, if you use the word sodomy just to mean the conduct that was deemed protected in Lawrence versus Texas, the answer to that is no. But I don't believe that the common law use of that phrase swept that narrowly. And that's the reason why. Let me, let me ask you, let's assume you're absolutely right. The robbery was taking property by force or by threatening to charge or whatever, attack the reputation of somebody in this, with sodomy and that type of thing. Let's assume that still continued in the common law. It looks like Virginia took robbery and broke it into two prongs, still using the common law terms, because Virginia still does, and in 258 characterized it basically by force as recognized by the Supreme Court in Stokeling, and in 2-59 created the sodomy robbery. They called it extortion, but they used all the very same language, taking property by force or illegally doing that. And I'm wondering how Virginia's codification, its split up of the common law like that affects your analysis for this case, which came after, after those statutes were enacted. Yes, your honor. I think it's a mistake to read 18.2-59 as a codification of this exception to the robbery common law crime. I understand 18.2-59 simply to be the punishment for what was common law extortion. At common law- Excuse me, Mr. Jones, aren't both of those punishment sections, they don't define the crime. That's correct. But both extortion and- The Supreme Court has really been on record that those are punishment sections, isn't that correct? That's- How does that affect your argument here? Well, so first to say that there is common law extortion and there is common law robbery. And if the legislature was going to excise this version of extortion from robbery and now put it underneath this extortion punishment statute, the Supreme Court of Virginia tells us that there must be clear legislative intent to do so. And that that intent must be plainly manifest. And so we- So you, you know, from what I'm reading here, it seems you're really relying in terms of a strict application of the law as it is, I mean, in terms of whether anyone would ever be charged with this. That's kind of out of the way, and Judge Keene has alluded to that. But I think the question, as Judge D. Myers put it, is you really don't need a criminal act here. You're talking about fear of telling someone that you engage in sodomy that could support common law robbery. That doesn't have to be a crime. It's not the crime of sodomy, it doesn't have to be a crime, it's just a reputation. Would you do it to keep someone from telling you, telling that you've engaged in sodomy? That's a whole different thing. And the question of whether to certify the Supreme Court, I mean, sounds good to me, but it seems like the certification would be, Supreme Court of Virginia, why don't you overrule those cases that you've got on the book up there? That doesn't sound like a clarification of the law. Those cases are there. They've had a chance to overrule the legislature. It's an interesting thing, but I don't think we're talking about extortion here. We're talking about a different type of robbery that arises from this exception, and the question is, this exception, because it's old, you've got Lawrence versus Tech, nobody thinks it's worth anything, but could you rob someone in doing it? Now, let me move to another question, because I think this is where Judge Niemeyer's going, I think. It looks like this is a categorical approach that we're taking here. If we somehow got it to be the modified one, isn't this a divisible situation here? So, to work backwards, no, I don't think this is divisible. I think under Vincent, you would say that there are different means. But if it is, you lose, don't you? I don't know that that has been fully briefed, Your Honor, and so I'm not prepared to yield that. Oh, he's not been briefed at all from what I can see, but I'm just trying to understand how it works, and I don't know why it wasn't brought up. It was argued below always on the strict categorical approach, and I do think Mr. White's safe under a modified categorical approach, but if I could turn back to your first question, I think the question for certification would be whether or not there's been judicial abrogation of the common law, or whether or not there has been legislative abrogation of the common law. And I think it's set forth pretty clearly in my brief, I don't think there's any case to be made that there's been judicial abrogation. And then I think as to legislative abrogation, you have to look to, whether it's the Virginia Supreme Court of Virginia or this court, look to what the standards are as set by the Supreme Court of Virginia. And the Supreme Court in Virginia has set an incredibly high bar for measuring whether or not there has been clear legislative intent to abrogate a common law crime. Well, you kind of walked us through that starting, you took us from England, common law all the way up to understand how Virginia look at these things, and how they set the law and make it very difficult for you to do things otherwise. That's why I think Judge Keenan is right, if you want to do something with this, you have to go back to the Supreme Court of Virginia and ask them to clarify. But again, I'm not sure it's a clarification, it's a, you know, hey, we all know that you ought to overrule this thing, why don't you just go ahead and overrule those cases or go differently on it? So I don't know. I think, Judge Wynn, there may be a different answer, and this also, I believe, goes to Judge Niemeyer's question is, hasn't the statute, you know, 18.2, 16, 18.2, 58, 59, hasn't that been a legislative abrogation of the common law? No, I didn't suggest that, sir. I suggested they bifurcated the common law, separating eight from nine. They're both common law based crimes, no abrogation, but they put them with different penalties in different sections, and as a consequence, the Supreme Court of Virginia regularly, probably a dozen times, has defined robbery in Virginia now as the taking with intent to steal of personal property of another from his person or his presence against his will by violence or intimidation. And then they have defined intimidation under that, which is the only one available for intimidation means willfully to take or attempt by putting in fear of bodily harm. And they go on and explain that further, placing the victim in fear of bodily harm, and they've cited several cases for that. So my whole point is that the 2-58 categorically says taking a property by intimidation, which the court hasn't construed to mean intimidation of putting somebody in fear of physical harm. And of course, that's almost verbatim what the Supreme Court in Stokeling said was a classical force clause. Yes, Your Honor, in a case my answer to that wasn't clear, the common law had common law robbery, which included this exception, and it also had extortion. And so 18-259, I think is best read as simply the punishment for the other versions of common law extortion. And it isn't limited to this scenario. It's not limited, but includes it. In other words, the language of 59, 2-.59, includes the taking of property by threatening somebody with sodomy or whatever reputational thing. And so my whole point is, really, if we look at what the Supreme Court is saying about its own law now, Virginia, and how they've construed it, I was just reading from Bivens versus Commonwealth. That was a 1995 decision. And they were explaining what the intimidation was, and the intimidation is putting somebody in fear of bodily harm. And so it seems to me, then you're stuck under Stoeckling, under categorical approach. What happened with the Houston formulation, it's not gone, it's taken up. You threaten somebody with charging them with sodomy is taken up in 59. And they do call it extortion, but they mix it in with all the aspects that cause extortion. But that's included. I think to do so, your honor, that would be essentially an abrogation of the common law formulation of common law robbery. And to have done that, it would be judicial abrogation, or judicial modification, essentially excising that exception from- Let me ask you then, I hear your point, and I'm not sure it's an abrogation, I think it's a splitting up. But let's set that aside for a moment. How do we handle the Supreme Court's statement, the only gate you can go through is taking property by intimidation. And intimidation, they have specifically defined as putting somebody in fear of bodily harm. Now how do we handle that? That seems to me that they do not say threatening somebody to charge him with sodomy. So I think the statement from Bivens and from lots of current cases, both the Virginia Supreme Court and the Court of Appeals are statements of the elements, and they simply are not stating the existence of the exception. Just like there were cases between Houston and the 1930s that stated the elements without noting the exception, and just like there have been cases since then between the two sets of cases that didn't state it. That is a statement of the law as necessary for those cases, and I don't think that we should read into it that Virginia no longer- Well I don't think they limit it to those cases, they're stating the elements. They're stating the elements of the offense and defining those elements. And under the categorical approach, we look at the elements and the fact of conviction. I think it's also- I believe, Your Honor, it is also true we have to look at the rest of the common law which informs exceptions to those elements. And so I think the Virginia Supreme Court, through Houston, through Maxwell, Fleming and Faulding, has already answered that question as to whether or not it remains a part of the Virginia common law. So, but I think, just to be clear so that I understand it, it seems to be, Judge Niemeyer is correct in so far as that 1-200 requires, but 1-200 does require explicit abrogation. Not this sub-absolute type abrogation, and the problem here, of course it goes back to the cases. I mean, you've got a state Supreme Court in three cases that says it right on point, and they haven't abrogated it, nor has the legislature. So we, as an appellate court on the federal side, dealing with a state law in which they pretty much have said what the law is, oh yeah, it certainly looks like that, but they haven't done that. And it may be reasonable to read the sentencing statutes and things of that nature in the manner that we're doing it, but it's the state Supreme Court that said it, and it has not overruled it, nor abrogated it, nor has the legislature. No, I agree. That makes it part of common law, I mean, and the question of Lawrence v. Texas, very good question, but I think you could, it looks clear to me, you could violate this with fear. This thing says fear of a threatened, in terms of sodomy. It didn't say sodomy was a crime, it didn't say the government was charging them. That wouldn't make any sense. The government would go out and create robbery by threatening, I'm going to charge you with it. It's somebody out there saying, I'm going to go out and do this. I think there are plenty of people that would submit to robbery, who if you put them, a lot of people who probably feel like that's not something I want you to do, and I will give it to you or whatever under that threat. But I'm just saying that everything I'm hearing sounds good, but the way Virginia structures its law and how you can abrogate stuff, and this does require explicit abrogation, it looks like Virginia ought to change some laws. I think that really is the question, is what is the state of the law in Virginia, and has judicial silence about the exception, despite recognizing it previously, and no explicit discussion of it in statute, is that sufficient given Virginia's commitment to the common law, is that enough that this court, this federal court, could now, and should now say that no, the state of the law in Virginia is as the government suggests. I see my opening time has expired. All right. Mr. Joseph, I guess we'll hear from you. Thank you, Your Honor. I noticed the time of the day. I'll try to make it brief and to the point. I would say that what the defendant is relying upon on these cases, Virginia has not applied the rule that the defendant so earnestly asserts. Houston was a case of an assault on somebody by use of a firearm. Maxwell was robbery of a Western Union telegraph clerk. Fleming, robbery of two boys fishing of their frogs and their guns. Fulton, conspiracy to rob a U.S. mail truck. But they don't really have to, you don't really have to apply it on our law. We had an en banc case recently, this Aparicio case, pretty much answers that. And it just says, you don't need legal imagination if the state Supreme Court has said it, then we don't get in this possibility stuff. And I grant it, it's an old case. And I also grant it, I don't think they will ever do it. But I'm looking at this case, and if we do that, then I don't think we can reimagine how this thing can be applied, even at the launch, because the state Supreme Court has said it. And you tell me what has abrogated the state Supreme Court's decision, not the legislature, so who has done it? What I'm saying is dicta, that is, the Virginia Court of Appeals- What's dicta? What was dicta? Dicta, defined in Newman v. Newman, 42 Virginia, ballot 557-564. Dicta in a prior decision refers to that portion of an opinion, quote, not essential to the disposition of case. And that's all this is, it's dicta. So your position is that Virginia has never really had a case on point- That's exactly right. So I must be reading those cases quite differently, because I thought they said it. You can call it dicta or whatever you want to do, it's the Supreme Court of Virginia. It's pretty strong stuff, it said it. But it's dicta, and I would submit that really we're talking about the categorical approach, as one of your court garner has said. And the categorical approach under Gonzalez v. Duenas-Alvarez, 549 U.S. 183 at 193, the defendant has to show, not just legal imagination, but the defendant has to show that he or somebody else has actually been prosecuted. A realistic probability, not just a theoretical possibility. And I submit that under Moncrieff, this is just about an invitation, some of the invitation to use legal imagination. Okay. Gina is trying to get your attention. Mr. Joseph, the Moncrieff find a case principle or the reasonable possibility of a prosecution doesn't apply with the state. The highest court of the state has made clear that this is a crime. I mean, your argument is really resting on the fact that the state hasn't made clear. Isn't it? That's right. It's dicta. It is dicta because those cases did not involve any kind of sexual act. There was no homosexual act, no heterosexual act. There was no sex involved in it. Right. What they said was just extra. But the court took the opportunity to define the crime, didn't it? They repeated what they thought was the common law or what was applying. But it didn't apply. It was not a holding. What I'm saying to the court is, yeah, they said it. But it wasn't a holding because holdings applied to facts. And everything- But it was a correct holding. I mean, at the time, Virginia adopted the common law of England. And once you go back and look at the common law of England, this is what it did. I think those justices back on the Supreme Court of Virginia knew what they were doing in 1938. They- That wasn't- I don't know how you say it's dicta when all they're doing is telling us what the common law said. I think that's disrespectful, to be honest with you. I- You know, it may be a way out of it. But I don't think that's the way out of it to say that these justices were speaking in dicta. And, you know, justices of that time period, when I read their opinions, there was some really tight writing that went on back there in those days. And that looks like it's pretty strong law. I'm not saying it still would be. And I'm saying it should be. I'm just saying if you go back, if you start at the beginning, it says, well, Virginia Supreme Court, just ignore that. That's dicta. When all they're doing is stating what the common law is, and Virginia has adopted the common law of England, which clearly this is what England recognized as the common law. So I'm not saying- I'm not trying to kill your argument at all, but I'm just saying I don't get that one. That's not the start I would take on it. I don't mean any disrespect to any court, especially the Supreme Court of Virginia. I have the highest respect for all courts. So I don't mean any disrespect. I don't want to imply that you do. I know you to be a very professional person. So don't take that in any way as a personal criticism. I know you would never do that. Yes, I would not. Well, Mr. Joseph, you have some allies because the Supreme Court has repeatedly talked about looking at the prosecutions, actually taking place, the jury instructions that are given in trials throughout the state, and the definitions given by the court in ongoing applications, and none of those. We could find not a single case prosecuted under this, and the chances that they would ever be prosecuted, and to say that categorically, therefore, this is not a crime of violence is, would be speculation because they recited at reciting some English, English law, which mechanically they're supposed to recite, but they have never applied it in Virginia. Well, yes, and the Supreme Court record, Supreme Court of the United States recognizes that is a fatal flaw in establishing the nature of an offense. And I think it's somewhat noteworthy that the two times this court has talked about Virginia common law robbery in Presley in 1995, and in Winston in 2017, that this wasn't argued. In fact, nobody brought this up. We've got it for the first time. Mr. Joseph, what's wrong with certifying the question of whether under Virginia common law robbery, can an individual be convicted of common law robbery by means of threatening to report a victim with, what's wrong with just asking that? You know, you're saying, no, can't be, can't be anymore. This is old stuff, and opposing counsel is saying, hey, you know, it's consistent. It hasn't been abrogated. What's wrong with asking them to weigh in on it? What's wrong with it, I submit, is that the defendant, in his brief, note, on page 12, note four, says that the punishment for common law robbery cites this statute. The statute that was in the supplemental filing of the government. And the Virginia Supreme Court and George versus Commonwealth, 242 Virginia, 264 at 277, says the punishment for common law robbery is this statute. 18.2.58. So, what I'm saying is, is that you look at that statute, if that's the punishment for common law robbery, and you look at the statute, and there is no way you can commit that robbery. The distinction in Virginia is that the common law is defined by the Supreme Court of Virginia, unless otherwise defined by the General Assembly. Okay? Now, abrogated by the General Assembly, and defined by statute. 18.2-58 is a punishment statute. So, that does not abrogate the common law. It simply says what the punishment was. And that's what the court said in George versus Commonwealth. It was- You can't, you can't have- Judge Keenan is trying to throw you a line here. Which he said, why don't we certify the Supreme Court to someone who can abrogate it? So, I don't understand why you would be opposed to that, because I would tend to think they'd probably go to go in your direction on this here. Maybe you have some reason to believe they wouldn't, or you don't want to put it up for it. I think when you get to the business that- Of course, Judge Nima has alluded to the fact it never happened. I agree, it hasn't happened. But I don't think you need it. We just had an en banc case that settled that question. If the state Supreme Court has said it, it's done. And you can call it dicta, but there were four Supreme Court cases from Virginia on this. Wasn't one little aberration, four of them. So, I don't know what this four dicta type thing, but the Supreme Court stated it. And they were stating what the common law of England was, which Virginia recognized it. Judge Keenan says, why don't you certify it to the Supreme Court? Then they can go back and they're the ones that can overrule these cases. I'm not saying I'd oppose that. I'm just saying, I don't understand why you would say that's not a viable opportunity here. Thank you, Your Honor. If the court wishes to do that, of course, the court can. My only point is that it's a lot of dicta and I don't see a punishment. I don't know how you can have a crime without punishment. I don't know how you can have a crime, common law robbery, without punishment. And I think the legislature in 1975, when they enacted this statute, they, in effect, abrogated the common law. But you could get the conviction. You could get a conviction, but you couldn't get a sentence or anything from it. Is that what you're saying? What I'm saying is you can't have a crime without punishment. The Supreme Court has said you can't have a crime without punishment. When you look at Judge Brinkham's ruling in Williams v. United States and the supplemental authority from May of 27, this year, May 27, she pointed out, she cited a Supreme Court case that said you can't have a crime without punishment. That would be a third way to abrogate a statute in Virginia, you're saying. Either the Supreme Court can do it, or the legislature can do it, or you can just not have a punishment for it. Well, that's one way of putting it, Judge. Yes, sir. I'm just trying to follow out. I'm following Judge Keenan. Sounds like to me she knows a little bit more of the Virginia law than I do on it. I thought you could only do it by the Supreme Court and the legislature, but you're telling me there's another way to do it. Well, the legislature, when they enacted the punishment statute, they changed it in 75. That's their action. If there's no punishment, they're saying common law robbery is functional by this statute. You look at the statute, there's no way to commit common law robbery by threatening sodomy. So my only feeling is, why send this down the street when you can look at it and say, I don't know if we don't want to sound a bit dicta, but looking at the actual, could this be, could this happen, and is this a crime anymore in Virginia? Well, I would say it's not, because you can't be punished for it. The Virginia Supreme Court has said what the punishment statute is for robbery, and you look at the punishment statute, and I'd say we're done. Well, although Mr. Joseph, the punishment statute 18-2-58 talks about punishment for robbery by partial strangulation, suffocation, striking, or beating, or by other violence to the person, or by assault, or by presenting a firearm or the threat of a firearm. It's not discussing the punishment. It's not purporting, as you say, to discuss the punishment. So, how can you say a crime that was punishable in common law, that's not referenced in the statute, can't be still punished at common law? My question is- That's circular, that you're saying- Well, I don't mean a circular argument. Your Honor's been on the Supreme Court of Virginia far more than I did. All I'm saying is, and I acknowledge that, all I'm saying is the Virginia Supreme Court said, look to this statute. That's where the punishment is for robbery. You look at the statute, and it says how punished, and it describes if you have robbery committed in certain ways, this is the punishment. So, I don't see a punishment statute. Maybe the defendant does, or maybe your Honor does, or the court does, and that's fine, but I don't see it. So, I don't know why we'd send the case down the street to the Virginia Supreme Court when you can't have a crime without punishment. That's all I have to say. That's really my argument. Thank you for hearing me, unless you have further questions. All right. Thank you, Mr. Judge. Mr. Jones? Thank you, Your Honor. I think it's important to follow up that with looking at what 18.2-16 says. And it says that a common law offense for which punishment is prescribed by statute shall only be punished in the mode so prescribed. And then when you look at 18.2-58, it lists the prescriptive punishment for 10 different means of committing Virginia common law robbery. It does not say all common law robberies are punished as X, and it says nothing whatsoever about this particular version of common law robbery. And so... If somebody commits this version of common law robbery, what's the sentence? I would suspect that it is a common law punishment known to the jurists of Virginia. All the more reason to send it to them. But it is... The question is, for this court, has... But wasn't the old common law punishment up to life in prison for robbery, and in certain cases, capital punishment? It was, Your Honor. I actually believe there is a statute on the books, 18.2. It might be 14 that says you can't have death. There's no capital punishment except by statute. So I'm not positive, Judge Niemeyer, but I know the jurist in Virginia would understand that. And so, Judge Wynn, as to your question, can you have a common law offense that doesn't have punishment? I don't think we're in that situation, but it's very interesting because this court's decision in Hill v. Nicodemus relies on a Supreme Court of Virginia case called Wackwitz, in which they're looking at the common law crime of suicide. And by statute in Virginia, they specifically did away with the punishment for suicide. But the Supreme Court said that even that legislative act, specifically doing away with the entire punishment, is not sufficient to mean that the common law offense is no longer there. And so in Virginia, we have a situation where it is a crime, a common law crime to commit suicide, but there is no punishment on the books. And in 2014, 2015, 2018, the General Assembly has had bills to try to decriminalize suicide, none of which have gone through. So those cases, and this court's case in Hill and also Brown v. Harris, which is at 240 F. 3rd 383, really demonstrate just how high the bar is to show clear legislative intent to change the common law. And I think, Judge Nehemiah, I think it's worth saying that to say that we now have an extortion punishment that covers this conduct in 18-259, I don't think that solves it because in common law, they knew that there was a difference of this version of extortion. I mean, they understood that this was different and worse, and so they made it part of robbery, which was a worse offense. And you have situations where they describe the elements of common law robbery before Houston without referencing this version. You have incidents where they reference common law robbery and the elements without referencing this exception between Houston and the 1930 cases. And then you have it to the present. I don't know that the fact that there is now a specific punishment statute for extortion shows any intent by the legislature or the judiciary to have intentionally carved out this version, this form of extortive conduct, and call it something different. All right, let me ask you this. Our ultimate goal is to try to determine whether Mr. White committed a crime of violence in the past. The question is, under your formulation, what are the chances that he committed a crime of violence by threatening sodomy? Looking at the elements of the offense and the fact of conviction. I guess the question is, in the modified categorical approach, are there documents or are we actually looking at what his specific conduct was? The effort is to try to find out, without going into the facts of a particular case, trying to find out whether a predicate offense is a crime of violence. I don't know the record. And the question is whether Mr. White committed a crime of violence. And I can tell you what I'm getting to is that this area is a difficult area because every state has a whole range of crimes. And they have all kinds of elements and innuendos and formulations about it. And the court has never said it has to be 100% or it has to be perfect. They basically said whether this man committed it is more of a percentages type of thing. In other words, they don't use percentages. They use another word. But the likelihood that he committed it. We have undisputed evidence here that we have no record of this crime ever being prosecuted in Virginia. We have four cases as late as 1940s that refer to the formulation of England. And we have no recent cases that refer to that reformulation. And we have these two statutes that are one statute 58, 258. And the question is, ultimately, did this man, when he violated, committed common law, when he committed robbery in Virginia, did he commit a crime of violence? And your argument is because there is that formulation beginning in 1890 about threatening to charge sodomy, that this guy, therefore, didn't commit a crime of violence. And I wonder how we satisfy the demand to show that this man committed that crime, looking at the descriptions of this offense and how it's been prosecuted and how the jury instructions formulate it. We always look at those. We look at cases that have actually been done. And of course, it fails on all of those. We know this man was not convicted. We know almost with a certainty this man was not convicted of robbery for threatening sodomy. So we're arguing this very intellectual academic point, which actually, I enjoyed reading your brief on that. It went into it in quite detail. I sort of got sucked into it and thought maybe you should do an article on that. That was great. But I'm not sure. I could piggyback on that. Mr. Jones, I've been practicing law in Virginia for, oh my gosh, 40-some years. And I have never heard this argument made. I think you deserve a lot of credit. Well, thank you. What I would say, Judge Niermaier, just briefly, I know I'm two minutes over, is I don't want to cast it as a formulation that appeared in 1890 in Virginia, more as one that has always been in Virginia since its adoption of the common law. And I take the court's point, and I thank the court for its consideration of this. I do think that if the court is not inclined, certainly certification to the Supreme Court of Virginia may very well be warranted given the federalism and comity concerns and how directly on point we are taking some pretty strong language from the Supreme Court of Virginia about what is common law. One thing I want to be clear is that our analysis here is not under the modified categorical approach, because that's not been raised by the government. Not even an issue in the case is the categorical approach, which you can slide into the other one, but it's not here. That's correct. And then when you get in the business of, well, it's never been done before, that en banc case, we got that apparatio soria case's own point. I mean, that is there. If the state's highest court has spoken on it, we don't get in the business of saying, well, they'd never done it before. Everybody knows you wouldn't do it. We've got to respect the Supreme Court of Virginia four times, as old as it may be. If Virginia wants to do something with it, it's got two ways to do it, legislatively or by the Supreme Court. We also have a bit of a blind spot, Judge Wynn, which is that the only way we would, I think, know about these cases would be if somebody were convicted on it and then appealed. And so I'm not aware of, despite having worked for a circuit judge in Virginia, of any way to retrospectively go back and identify the factual predicates for all robbery charges in the Commonwealth. That's an interesting and good point. I hadn't thought about that one, that we approach this as though just because we haven't seen a case on appeal or there's nothing written on it, it never happened before. I hadn't thought about that. That's a good one. Mr. Jones? Yes, Your Honor. If I could pile on. I think you've made a really good point here, because unlike so many cases, Virginia does not have an appeal of right at any level. And so, and very few of the cases are taken on appeal. And so lacking an appeal of right, who knows what's been prosecuted? Yes, Your Honor. All right. I think we've covered the point very well. Mr. Jones, you're court appointed? I am, yes, Your Honor. I'd like to recognize that and thank you for your service to the court. Of course, that makes the system work, and we appreciate it very much. At this point, we would come down in Greek counsel. We'd probably give Mr. Jones an extra handshake for his service for this. But of course, Mr. Jones, if you're in a public service too, so we don't want to overlook that. We thank you for your arguments, and I'll ask the clerk to adjourn sine die. Dishonorable court stand is adjourned. Sine die. God save the United States in this honorable court.
judges: Paul V. Niemeyer, Barbara Milano Keenan, James A. Wynn Jr.